UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

_____X
RICHARD C. BEALL,
Plaintiff,

                                        CIVIL ACTION NO.:  1:16 CV 24050

VS.

SOUTH FLORIDA REGIONAL TRANSPORTATION
AUTHORITY, TRI-RAIL, VEOLIA TRANSPORTATION
SERVICE, INC. (aka TRANSDEV), and DANIEL CARTER STOKES
Defendants,
_____X

**COMPLAINT**

NATURE OF ACTION

1. The plaintiff Richard C. Beall brings this action against the defendants for violations of the safety whistleblower protections set forth in the National Transit Systems Security Act (NTSSA), 6 U.S.C. 1142.

JURISDICTION

2. This Court has subject matter jurisdiction in this case pursuant to the National Transit Systems Security Act (NTSSA), 6 U.S.C. 1142(c)(7). The whistleblower protections of the NTSSA apply to public transportation agencies eligible to receive federal mass transit assistance under Chapter 53 of Title 49. 6 U.S.C. 1131(5). Chapter 53 defines "public transportation" to mean "transportation by a conveyance that provides regular and continuous general or special transportation to the public." 49 U.S.C. 5302.

3. The South Florida Regional Transportation Authority (SFRTA) provides commuter rail transportation to the greater Tri-County areas of Miami (Dade), Broward,

and Palm Beach Counties, operating as Tri-Rail. Veolia Transportation Service, Inc. is the contractor who operated the SFRTA's Tri-Rail service. The National Transit Database maintained by the Federal Transit Administration confirms that SFRTA (Tri-Rail) annually receives millions of dollars in FTA mass transit funds, and accordingly it and all its contractors, subcontractors, and employees are subject to the NTSSA.

PARTIES

4. The plaintiff Richard C. Beall is a resident of Miami, Florida, and served as a locomotive engineer operating the defendants' passenger commuter trains traveling among Dade, Broward, and Palm Beach counties in Florida. At all material times, he qualified as an employee within the meaning of the NTSSA, 6 U.S.C. Section 1142.

5. The South Florida Regional Transportation Authority (SFRTA) is a public transportation authority with an office at Pompano Beach, Florida. Operating as Tri-Rail, SFRTA provides commuter rail transportation to the greater Tri-County areas of Miami (Dade), Broward, and Palm Beach Counties. Tri-Rail has offices at Pompano Beach, Florida.

6. Veolia Transportation Service, Inc. (now also known as Transdev) was the contractor who operated the Tri-Rail service on behalf of the defendants Tri-Rail and SFRTA. Veolia has offices at Hialeah, Florida.

7. Daniel Carter Stokes is a resident of Pembroke Pines, Florida, and at all material times served as Transportation Manager for the defendant Veolia.

NTSSA

8. The NTSSA prohibits public transportation agencies and their contractors or subcontractors from discharging or in any other way discriminating against any employee who "reports a hazardous safety or security concern" 6 U.S.C. 1141(b)(1)(A). If any such behavior was a "contributing factor" in the discharge, then the employee

satisfies his burden of proof and is entitled to all make whole remedies, unless the employer can prove by "clear and convincing evidence" it would have taken the same action in the absence of the behavior.

FACTS

9. At various times there are locations on railroads subject to temporary slow orders, usually due to the activity of track and signal work crews on the right of way. There are inexpensive fail-safe measures to ensure a locomotive engineer does not miss temporary warning signs warning of such situations. One such measure is the use of warning signs equipped with flashing lights of the same color to ensure engineers see the sign and respond appropriately.

10. From 2008 up through 2012 the plaintiff Richard Beall reported the safety hazard caused by the lack of such flashing temporary warning signs on Veolia's Tri-Rail operations. For example, on January 28, 2008, he copied Veolia Transportation Safety Director on a letter pointing out:

> it would be so simple to place warning boards and signs, that in addition to color, would have the same color flashing light (similar to a barricade light) that would remain on until the problem or situation was corrected or rectified. If an engineer and or crew members could see these flashing lights in the distance from many miles away, what a simple and economic way of avoiding ninety-nine per cent of all incidents before they become incidents or accidents.

Exhibit 1 at p.2. Beall followed that up with another letter on July 11, 2008, to Veolia's Safety Manager asking the Company address the hazard created by stop boards and warning signs that are not visible enough. Exhibit 1.

11. On numerous occasions between 2008 and 2012 Beall also brought the subject up at Safety Meetings, but Beall was told it would cost too much money to provide flashing lights for the warning signs, and no action was taken. During the 12

months leading up to September 2012, Beall again raised the subject with Veolia Safety Director Dan Basile, with the same lack of response.

12. From time to time railroads will decide to test employees on various rules. Such tests do not involve an actual hazard, and normally employees are not fired for passing a "test" warning sign. Rather, a failed test is handled with what is known as "coaching and counseling" to ensure the employee knows and understands the rule involved.

13. Engineers who have passed actual warning signs protecting actual work crews have not been fired. For example, on September 25, 2012, the day before Veolia "tested" Beall, Veolia locomotive engineer Noreen Patton did not see a Track Foreman's work limit warning sign and instead of slowing down ran through the work site at 60 miles per hour, thus exposing an actual work crew to a serious risk of death or maiming. Veolia did not dismiss engineer Patten and did not revoke her certification.

14. On September 26, 2012, Veolia Road Foreman Jim Sharpe claimed that he placed an old warning sign at a location where Veolia knew Beall's train would be passing. The warning sign he claimed he placed was in a deteriorated, unstable condition. It was so worn it had lost its reflectivity. It had fallen over twice before that morning in the same location, due to the sign's lack of suitable metal legs with foot prongs for driving it securely into the ground.

15. Beall did not see any warning sign at that location when his train passed, and thus he did not slow down or contact the dispatcher. The next northbound train after Beall's southbound train passed by that location a few minutes later, and the video from that next train confirms the sign was not in a proper upright test position but was leaning over away from the track.

16. On the incident date, Veolia gave Beall the only trainset without front or rear video camera equipment to record the right of way. Veolia had no objective proof showing the state of the sign when Beall's train actually passed by it because the Road Foreman in charge of testing Beall did not photograph or video Beall's train at that location despite the ready availability of cell phone and other cameras.

17. Nevertheless, on October 1, 2012, Veolia sent Beall a Notice of Formal Investigation charging him with violating a wayside sign rule and ordering him to appear for a Company "Revocation of Certification" Hearing. That Company trial occurred on October 30, 2012, without giving Beall the benefit of any formal rules of discovery, procedure, or evidence.

18. A Veolia manager served as the Hearing Officer who determined what evidence and testimony was to be allowed. Beall was not allowed to be represented by an attorney for that trial, and Veolia did not introduce the actual wayside sign into evidence despite the fact it was readily available to them.

19. Veolia Transportation Manager Daniel C. Stokes was one of the Company witnesses who testified against Beall at that trial. Stokes is also the manager who decided to terminate Beall's employment based on evidence Veolia allowed in that trial. On November 12, 2012, Transportation Manager Stokes issued a Discipline letter dismissing Beall from service and revoking his Locomotive Engineer Certification. Exhibit 2.

20. No other Veolia engineer has ever been tested on such a sign before or after Beall. And no other Veolia locomotive engineer has ever been fired for passing a test warning sign.

21. In order to operate a locomotive, an engineer must have a valid engineer's certification. The U.S. Department of Transportation's Federal Railroad Administration

has *de novo* jurisdiction over the decisions of railroads to revoke the certification of locomotive engineers. The FRA Administrative Hearing Officer conducts a *de novo* proceeding "to determine the relevant facts and the correct application of the regulations relating to the qualification and certification" of a locomotive engineer. 49 C.F.R. 240.409(c). Pursuant to 49 C.F.R. Section 240.411, the decision of the FRA's Administrative Hearing Officer constitutes the final agency action upholding or reversing a railroad's revocation of an engineer's certification.

22. The FRA's Administrative Hearing Officer conducted such a *de novo* review of Veolia's revocation of the plaintiff Beall's locomotive engineer certification, and the FRA's final agency action was issued on April 7, 2014. Exhibit 3. The FRA made the following final determinations:

> (1) the performance skills test was conducted in a manner so skewed against the ability of the Hearing Petitioner [Beall] to perform correctly as to be the functional equivalent of a test that the engineer could not pass, based upon the extremely poor condition of the warning sign, which was likely not visible to the Hearing Petitioner, and . . . (2) the warning sign was partially fallen over at such an angle that is it more likely than not it was not visible to the Hearing Petitioner, in conjunction with its poor condition, and that this condition constitutes an intervening cause pursuant to 49 C.F.R. Section 240.307(i)(1), that prevented or materially impaired the Hearing Petitioner's ability to comply with railroad operating rules.

Exhibit 3 at p.12.

23. The FRA concluded, "there is no basis for revoking the Hearing Petitioner's engineer certificate," and issued the following final Order:

> Veolia's revocation of the engineer certification of the Hearing Petitioner [Beall], pursuant to 49 C.F.R. Section 240.117€(4), was improper, based upon the unfairness and invalidity of the test (49 C.F.R. Section 240.117(f)(3)) and an intervening cause that prevented or materially impaired the Hearing Petitioner's ability to comply with railroad operating rules (49 C.F.R. Section 204.307(i)(1)).

Exhibit 3 at p. 12-13.

24. Despite the fact the Federal Railroad Administration voided Veolia's revocation of Richard Beall's locomotive engineer certification, the defendants have refused and continue to refuse to reinstate him into his locomotive engineer position.

25. The disciplinary actions of railroads are subject to the final determinations of arbitrators appointed under the Railway Labor Act 45 U.S.C. 151 et seq. The decisions of such arbitrators upholding or reversing discipline are final and binding on railroads and employees. On October 14, 2013, the duly appointed Railway Labor Act arbitrator issued a binding Award rescinding Veolia's termination of Beall and ordering him back to work: "In reviewing the disciplinary penalty imposed, and having considered the circumstances in evidence as well as the tenure and record of the Claimant [Beall], I am persuaded by the Organization's argument that the penalty of dismissal is excessive." The Award's conclusion that the penalty of termination was "not commensurate with the infraction" is binding on Veolia, as was the Order to reinstate Beall into his locomotive engineer position.

26. Nevertheless, the defendants have refused and continue to refuse to reinstate Beall into his locomotive engineer position. On June 20, 2015 that Railway Labor Act arbitrator issued a supplemental Finding rejecting all of Veolia's arguments and reaffirming the Order to reinstate Beall. Exhibit 4. And still the defendants have refused and continue to refuse to reinstate Beall into his locomotive engineer position.

27. Beall filed a NTSSA complaint with the U.S. Department of Labor's OSHA Whistleblower Protection Directorate on March 26, 2013. During OSHA's investigation Beall kept OSHA informed of the defendants' ongoing refusal to reinstate him despite the rulings of the Federal Railroad Administration Hearing Officer and the Railway Labor Act arbitrator.

28. The defendants were aware of Beall's NTSSA protected activity, and by using his NTSSA protected activity as the basis in whole or in part for taking adverse and unfavorable actions against him, and by failing to make any effort to determine or have in place any process for ensuring compliance with the NTSSA, the defendants acted with reckless disregard for the law and with complete indifference to the NTSSA rights of the plaintiff and their employees.

29. As a result of the defendants' ongoing course of retaliation against him in violation of his rights under the NTSSA, Beall has suffered and will continue to suffer various economic losses, including loss of wages and fringe benefits, as well as compensatory damages, emotional distress, and attorney's fees and expenses.

NTSSA CAUSE OF ACTION

The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 29 of this Complaint with the same force and effect as if set forth under this cause of action.

30. The plaintiff engaged in NTSSA subsection (b)(1)(A) protected activity when he reported in good faith a hazardous safety condition to the defendants. 6 U.S.C. 1141(b)(1)(A).

31. The defendants had knowledge of all the plaintiff's protected activities, and knew or should have known that such activity was protected from any retaliation under NTSSA.

32. The defendants took adverse or unfavorable actions against the plaintiff in whole or in part due to his protected activities when it terminated him and revoked his engineer certification, and thereafter refused to reinstate him despite the final rulings of the Federal Railroad Administration Hearing Officer and the Railway Labor Act

arbitrator. In so doing, the defendants acted with reckless disregard for the law and with complete indifference to the NTSSA rights of the plaintiff and their employees.

33. The plaintiff filed a NTSSA Complaint with the U.S. Secretary of Labor's Region 4 OSHA Office of Whistleblower Protection on March 26, 2013, and thereafter supplemented that Complaint by notifying OSHA of the defendants' ongoing refusal to reinstate him and recognize his engineer certification.

34. At all times the plaintiff cooperated in good faith with OSHA's investigation.

35. As of this date, the U.S. Department of Labor has not issued a final decision regarding the plaintiff's NTSSA complaint, and it has been far more than 210 days since the filing of the plaintiff's Complaint. Accordingly, pursuant to subsection (c)(7) of the NTSSA, the plaintiff has a statutory right to bring an original action in United States district court for a jury trial regarding the defendants' violations of the NTSSA.

36. Pursuant to 6 U.S.C. 1412(c)(7), the plaintiff now is bringing this original action at law and equity for *de novo* review by the United States District Court for the Southern District of Florida, which Court has jurisdiction over this NTSSA action without regard to the amount in controversy.

WHEREFORE, in order to encourage employees to freely report all hazardous safety conditions without fear of any adverse actions being taken against them, thereby fulfilling the purpose of the NTSSA to promote safety on our nation's public transportation agencies, the plaintiff demands a Judgment under the NTSSA for all relief necessary to make him whole, including but not limited to:

--expungement of any and all references to the adverse actions related to the plaintiff's protected activities described above;

--reinstatement into his locomotive engineer position with all seniority and benefits unimpaired;

--compensatory damages for any economic losses due to defendants' conduct, including the value of all lost wages and fringe benefits;

--compensatory damages for emotional distress due to defendants' conduct;

--the statutory maximum of $250,000 in punitive damages;

--special damages for all litigation costs and expenses, including expert witness fees and attorney fees;

and any further relief the Court deems just and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY.

    By his attorney,

    */s/* Howard A. Spier
    Howard A. Spier, Esq.
    Florida Bar No.: 0334571
    Rossman, Baumberger, Reboso
     & Spier, P.A.
    9155 S. Dadeland Blvd.
    Suite 1200
    Miami, FL 33156
    (305) 373-0708 (telephone)
    (305) 577-4370 (facsimile)
    has@rbrlaw.com

and

Charles C. Goetsch, Esq.
Charles Goetsch Law Offices LLC
405 Orange Street
New Haven, CT 06511
Tel:  (203) 672-1370
Fax:  (203) 776-3965
charlie@whistleblower.com