UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:16-cv-24050-GAYLES/LOUIS

**RICHARD C. BEALL**,

    Plaintiff,

v.

**SOUTH FLORIDA REGIONAL
TRANSPORTATION AUTHORITY,
TRI-RAIL, VEOLIA TRANSPORTATION
SERVICE, INC., also known as Transdev,
and DANIEL CARTER STOKES**,

    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants South Florida Regional Transportation Authority ("SFRTA") and Tri-Rail's Motion and Memorandum of Law in Support of Motion for Summary Judgment (the "Motion") [ECF No. 56]. The Court has considered the Motion and the record, heard oral argument, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

### BACKGROUND[1]

---

[1] The facts relevant to the Motion are undisputed unless otherwise indicated and are taken from the following statements of facts along with their accompanying exhibits: (1) Table of Uncontested Material Facts in Support of Defendants SFRTA and Tri-Rail's Motion for Summary Judgment, [ECF No. 57]; and (2) Plaintiff's Opposition to Defendants SFRTA and Tri-Rail's Statement of Uncontroverted Material Facts and Plaintiff's Statement of Material Facts, [ECF No. 69].

The Court notes that neither party properly complies with Local Rule 56.1. *See* S.D. Fla. L.R. 56.1(b). As to Defendants, the Local Rules require separately numbered paragraphs for each material fact. *Id.* at (b)(1)(B). As to Plaintiff, the Local Rules require that "the very first word in each paragraph-by-paragraph response . . . [be] 'disputed' or 'undisputed.'" *Id.* at (b)(2)(B). Plaintiff also fails to limit his Statement of Material Facts to a "*single* material fact" per paragraph. *Id.* at (b)(1)(B) (emphasis added). "[T]he Court places great emphasis upon, and implores the parties

This action stems from a multi-year legal battle between Plaintiff Richard C. Beall, a former locomotive engineer, and Defendant Veolia Transportation Service, Inc.[2] ("Veolia"), his former employer, because of a safety test Veolia conducted that resulted in Plaintiff's engineer certificate being revoked and Plaintiff being terminated. In the instant Motion, SFRTA—the public agency that contracted with Veolia to operate the Tri-Rail service—moves for summary judgment in its favor as to Plaintiff's retaliation claim under the National Transit Systems Security Act (the "NTSSA"), 6 U.S.C. § 1142.

I.  **The South Florida Regional Transportation Authority**

Pursuant to Chapter 343 of the Florida Statutes, SFRTA is a public agency authorized to provide commuter rail transportation to Miami-Dade, Broward, and Palm Beach Counties. As an operating railroad, SFRTA is obligated to report to the Federal Railroad Administration ("FRA"). The commuter rail service SFRTA provides is commonly known as Tri-Rail. While the parties dispute whether "SFRTA sponsors the Tri-Rail service . . . [or] operates the service," [ECF No. 57 at 1 ¶ 2], SFRTA contracts with third parties to provide all operational functions for the Tri-Rail service.[3] These operational functions include hiring and supervising locomotive engineers, conductors, and other staff, and performing equipment maintenance, right-of-way safety inspections, dispatching, and testing.

From July 1, 2007, to June 30, 2017, SFRTA contracted with Veolia to operate the Tri-Rail service. Veolia's responsibilities included hiring and training locomotive engineers and other

---

to be mindful of, the fact that local rules have 'the force of law.'" *United States v. Marder*, 183 F. Supp. 3d 1231, 1235 (S.D. Fla. 2016) (quoting *Hillingsworth v. Perry*, 558 U.S. 183, 191 (2010)). For purposes of this Order, the Court shall utilize the same numbering sequence that Plaintiff applies to Defendants' Table.

[2] Veolia Transportation Service, Inc., is now known as Transdev North America, Inc. ("Transdev"). Veolia and Transdev are referred to interchangeably.

[3] Plaintiff alleges that "SFRTA is an 'operator of public transportation' because it owns, pays for, controls, manages, exerts influence over, and keeps in operation its Tri-Rail public transportation train service . . . ." [ECF No. 69 at 1–2]. Plaintiff further relies on the statements of Allen Yoder, SFRTA's Director of Operations, to argue that the "Tri-Rail and SFRTA are one and the same thing" and is the only service SFRTA provides. *See id.* at 2; 5 ¶ 36.

operational staff, as well as conducting safety and fitness testing for locomotive engineers and other employees.[4] Although it contracted with Veolia, SFRTA maintained control and authority over certain aspects of the Tri-Rail service. These included: (1) providing the locomotives and rolling stock for its Tri-Rail operations, with the Tri-Rail name attached; (2) maintaining the power to reject Transdev's General Manager without cause; (3) designating the Operating Rules that Transdev must comply with; (4) requiring Transdev to comply with SFRTA's System Safety Program; (5) requiring Transdev to operate in accordance with SFRTA's train schedules, timetables, and passenger service policies; (6) maintaining oversight of Transdev's performance, including the performance and testing of Transdev's personnel, and requiring testing to be acceptable to SFRTA; (7) approving the uniform dress standards of Transdev crew members; (8) requiring Transdev to train crew members on SFRTA's rules, regulations, and procedures, and to enforce them; (9) maintaining the right to change the Tri-Rail train schedule; (10) approving Transdev's Operating Plan, Annual Reports, System Safety Program, annual audits, and monthly and daily reports; (11) requiring any investigation of a Tri-Rail service accident to be done in accordance with SFRTA procedures; and (12) having authority over and responsibility for the dispatching of trains and certification of engineers and conductors operating its Tri-Rail service as of March 2015. However, SFRTA did not have a contractual or employment relationship with Veolia's employees.

Although SFRTA provides commuter rail transportation through the Tri-Rail service, the tracks on which the Tri-Rail service operates were previously owned by CSX Transportation ("CSX"). As a result, CSX maintained authority and responsibility over several functions,

---

[4] Plaintiff disputes SFRTA's assertion that Veolia was responsible for testing its employees, arguing that SFRTA did have "authority over the testing of Tri-Rail services engineers" because Veolia's "testing of Tri-Rail engineers had to be acceptable to SFRTA . . . ." [ECF No. 69 at 1].

3

including: (1) dispatching trains; (2) maintaining the tracks, switches, and right-of-way; and (3) barring individuals from working on trains operating on the tracks based on safety or other concerns. On March 29, 2015, SFRTA assumed responsibility of these functions. *See* [ECF No. 57-1 at 2 ¶ 7].

**II.     Plaintiff Reports Safety Concerns to SFRTA**

Prior to his termination, Plaintiff worked as a locomotive engineer for Veolia; he was never employed by SFRTA. Between 2008 and 2012, Plaintiff repeatedly reported safety concerns to Veolia regarding the visibility of warning signs along the rail line. Plaintiff proposed including flashing lights of the same color as the warning boards and signs to aid locomotive engineers in seeing the warning from several miles away. Plaintiff first raised these concerns to SFRTA at town hall meetings hosted by SFRTA in 2009 and 2010 at its headquarters.[5] Although Allen Yoder and Bradley Barkman, SFRTA's Director of Operations from 2009 to 2017, attended the town hall meetings, neither they nor any SFRTA staff recall hearing Plaintiff's statements about the warning signs.[6] SFRTA staff also did not recall informing other SFRTA employees of the substance or facts of Plaintiff's statements.

On September 26, 2012, Veolia conducted a locomotive engineer test consisting of placing a warning sign next to the tracks. SFRTA did not assist in planning or executing the test. During the test, Plaintiff failed to slow down or respond to the warning sign while operating a train.[7]

---

[5] Although SFRTA states that the town hall meetings only took place in 2010, *see* [ECF No. 57 at 2 ¶ 8], Plaintiff alleges—and the record suggests—that the town hall meetings took place in both 2009 and 2010. *See* [ECF No. 69 at 7 ¶ 41]; [ECF No. 69-12 at 6].

[6] Plaintiff disputes SFRTA's representation that SFRTA staff does not recall hearing his statements. In his opposition to Defendants' Statement of Facts, Plaintiff asserts that he confirmed that he made those statements about the warning signs, [ECF No. 69 at 3 ¶ 9; 7 ¶ 42], but fails to indicate how and by whom he received that confirmation. Plaintiff also asserts that Mr. Yoder and Mr. Barkman did not have proof that Plaintiff did not raise his concerns at these townhall meetings. *Id*.

[7] Plaintiff disputes that he failed to respond to the warning sign in light of the FRA later deeming the test to be invalid because the warning sign was not reasonably visible. [ECF No. 69 at 3].

Following an investigation and hearing, Veolia determined that Plaintiff violated Operating Rule 44, dismissed Plaintiff, and revoked his locomotive engineering certificate. SFRTA had no role in the proceedings or decision to discipline and terminate Plaintiff; however, SFRTA was aware of his engineer certificate being revoked. On October 11, 2012, CSX issued an order that barred Plaintiff from accessing the tracks because of Veolia's determination that Plaintiff violated Operating Rule 44. SFRTA did not take part in the CSX decision.

### III.     Plaintiff Challenges the Revocation of his Engineer Certificate and his Termination

In response to Veolia revoking Plaintiff's engineer certificate, Plaintiff appealed the decision to the FRA. The FRA conducted a *de novo* review of Veolia's decision and, on April 7, 2014, determined that: (1) the test was improper; and (2) Plaintiff's engineer certificate should not have been revoked. The FRA also rejected Plaintiff's retaliation claim against Veolia for lack of evidence demonstrating that retaliation factored into the test.[8] SFRTA was not a party to and did not participate in the FRA proceedings; however, the FRA's decision as to Plaintiff's engineer certificate was binding on SFRTA. Following the FRA decision, Veolia did not reinstate Plaintiff's engineer certificate or rehire him as an employee.

Plaintiff also challenged Veolia's termination through his union. The challenge went to arbitration and the arbitrator determined that Veolia's decision to terminate Plaintiff was excessive. Veolia appealed the decision to this Court, and this Court remanded the matter for further consideration before the arbitrator. On remand, the arbitrator affirmed his decision and Veolia again appealed the decision to this Court. On September 28, 2016, this Court affirmed the

---

[8] Plaintiff disputes whether "the FRA has any jurisdiction over or authority to make findings regarding the violation of his federal statutory whistleblower retaliation protection rights under the NTSSA," arguing that "the FRA's authority is limited to locomotive engineer test and certification," whereas only the Occupational Safety and Health Administration ("OSHA") "has jurisdiction over the plaintiff's NTSSA whistleblower protection rights . . . ." [ECF No. 69 at 3–4 ¶ 16].

arbitrator's decision, *see Veolia Transp. Servs., Inc. v. United Transp. Union*, No. 13-CIV-24125, 2016 WL 5405636 (S.D. Fla. Sept. 28, 2016), which Veolia appealed to the Eleventh Circuit. On August 16, 2017, the Eleventh Circuit affirmed this Court. *See Veolia Transp. Servs., Inc. v. United Transp. Union*, 695 F. App'x 535 (11th Cir. 2017) (per curiam). Throughout Plaintiff's legal challenge through his union, Veolia maintained that it would not reconsider its decision to not reinstate Plaintiff as an engineer until the arbitration and subsequent litigation concluded. SFRTA, however, was not a party to, and did not participate in, the challenges and subsequent arbitration or appeal Plaintiff's union pursued.

In March 2015, CSX gave up control of the tracks on which the Tri-Rail service operates. As a result, SFRTA gained authority over the certification of engineers for the South Florida railroad corridor—including the ability to lift Plaintiff's bar. On April 3, 2015, Veolia emailed Mr. Barkman to inform SFRTA of the status of the arbitration and to ask whether SFRTA would maintain CSX's bar of Plaintiff. Veolia did not disclose the FRA decision, nor did SFRTA ask for the FRA's position on Plaintiff's de-certification.[9] On August 7, 2015, Veolia again wrote to SFRTA to ask if SFRTA intended to continue CSX's bar. The letter provided a brief background on the test Veolia conducted on September 26, 2012, and the status of the arbitration proceedings. Again, Veolia did not refer to the FRA decision.[10] On September 15, 2015, SFRTA responded to Veolia's letter and confirmed that it would not lift the CSX bar.[11] The parties, however, dispute whether the SFRTA staff who decided to continue the CSX bar knew of Plaintiff's prior complaints

---

[9] Plaintiff notes that he "controverts any inference that SFRTA did not have actual or constructive knowledge of the FRA decision prior to October 14, 2016, and that SFRTA's only duty was to ask Veolia/Transdev about the situation . . . ." [ECF No. 69 at 4].

[10] Plaintiff again notes that he controverts any inference that SFRTA lacked knowledge of the FRA decision prior to October 14, 2016. [ECF No. 69 at 4].

[11] Plaintiff describes an in-person meeting in early August 2015 between Veolia's top managers and SFRTA's directors, including Mikel Oglesby, SFRTA's Deputy Director who assisted the Executive Director in all aspects of the Tri-Rail operations, to discuss whether SFRTA would lift the CSX bar. However, Plaintiff's citations to the record do not indicate that an in-person meeting among the parties took place.

and whether those complaints contributed to SFRTA's decision to continue the bar. *Compare* [ECF No. 57 at 4 ¶ 27], *with* [ECF No. 69 at 5].

IV.  **SFRTA Lifts the CSX Bar on Plaintiff**

On January 22, 2016, Plaintiff attended SFRTA's Governing Board Meeting and made statements regarding the safety complaints he previously made, the FRA's decision determining that his de-certification was improper, and Veolia's refusal to reinstate him. Plaintiff stated during the meeting that he was attacked "because of safety issues that [he] brought forth" and "the final straw was the test that was pulled on [him] [and that] was the very issue the main issue that [he] had brought up." [ECF No. 69 at 8 ¶ 43]. Plaintiff also mentioned the FRA decision and stated that the FRA "handed down a ruling that the bogus test that was pulled on [him] over [three and a half] years ago was improper and was completely thrown out." *Id.* The SFRTA Board then directed SFRTA staff to ask Veolia about the statements Plaintiff made.[12] Immediately following the Board Meeting, Plaintiff also personally spoke to Mikel Oglesby, SFRTA's Deputy Director—who also attended the Board Meeting—and reiterated his statements. On February 17, 2016, Veolia responded to the SFRTA Board's request for additional information on Plaintiff's statements. Veolia's letter again summarized Plaintiff's case and the status of the arbitration proceedings. Veolia also described the FRA proceedings, but stated that the FRA proceedings were "not relevant or dispositive to the pending arbitration proceedings, the appeal pending in the District Court or the bars put in place by CSX and SFRTA." [ECF No. 57 at 4 ¶ 30].

On October 4, 2016, SFRTA received a copy of Veolia's Pre-Hearing Statement in a whistleblower action Plaintiff filed with OSHA. Attached to the Pre-Hearing Statement were

---

[12] Plaintiff again notes that he controverts any inference that SFRTA lacked knowledge of the FRA decision prior to October 14, 2016. [ECF No. 69 at 4]. Plaintiff also alleges that SFRTA did not ask for or obtain a copy of the FRA decision from Veolia, the FRA, Plaintiff, or Plaintiff's union after learning of the decision from Plaintiff at the Board Meeting. *Id.*

copies of the FRA decision and this Court's September 28, 2016, Order affirming the arbitration award. Defendants allege that this is the first time that SFRTA saw the FRA decision and learned of this Court's Order, *see* [ECF No. 57 at 4–5 ¶ 31]; Plaintiff, however, argues that SFRTA had actual knowledge of the FRA decision as of January 2016 and constructive knowledge as of March 2015 when CSX transferred authority to SFRTA, *see* [ECF No. 69 at 4; 9 ¶¶ 49–50]. On October 24, 2016, Veolia again asked SFRTA whether it would continue the CSX bar against Plaintiff. On November 2, 2016, SFRTA lifted the bar against Plaintiff based on the materials in Veolia's Pre-Hearing Statement. Although SFRTA lifted the CSX bar against Plaintiff, Veolia refused to reinstate Plaintiff as a locomotive engineer until shortly before its contract with SFRTA expired. Instead, Veolia re-hired Plaintiff as a station ambassador at his previous salary as a locomotive engineer.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of her burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted). A fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm*

*Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (citation omitted).

"Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016) (citation omitted), *vacated on other grounds*, 2016 WL 11503064, at *1 (11th Cir. May 31, 2016). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014) (per curiam). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). Furthermore, conclusory allegations will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (citation omitted).

## ANALYSIS

Defendants make several arguments as to why summary judgment should be granted in their favor. First, Defendants argue that SFRTA does not meet the definition of a "public transportation agency" under the NTSSA. Second, Defendants argue that even if they were to meet the definition, Plaintiff fails to meet his initial burden of establishing a retaliation claim under the NTSSA. Third, Defendants argue that it would have maintained the CSX bar irrespective of Plaintiff's protected activity because of the information it received from Veolia. The Court need not address the first or third argument because it finds that Plaintiff fails to meet its burden of establishing a retaliation claim under the NTSSA and, thus, summary judgment must be granted in Defendants' favor.

I.      **The National Transit Systems Security Act**

The NTSSA states, in relevant part, that "[a] public transportation agency, or a contractor or a subcontractor of such agency, or an officer or employee of such agency, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for . . . reporting a hazardous safety or security condition . . . ." 6 U.S.C. § 1142(b)(1)(A); *see also* 29 C.F.R. § 1982.102(a)(2)(i)(A). For purposes of the NTSSA, a "public transportation agency" is "a publicly owned operator of public transportation eligible to receive Federal assistance," 6 U.S.C. § 1131(5), and "public transportation" includes, with certain limitations, "regular, continuing shared-ride surface transportation services that are open to the general public or open to a segment of the general public," 29 C.F.R. § 1982.101(h). Although the NTSSA "contain[s] [a] specific definition[] of a covered employer," OSHA regulations state that "[t]he determination of whether an 'operator' . . . includes owners who are not operators may turn on the facts of a given case and is better addressed through adjudication of cases under the NTSSA . . . ." Procedures for the Handling of Retaliation Complaints Under the National Transit Systems Security Act and the Federal Railroad Safety Act, 80 Fed. Reg. 69,115, 69,120 (Nov. 9, 2015) (to be codified at 29 C.F.R. pt. 1982) [hereinafter NTSSA Procedures].

The NTSSA "provides for employee protection from retaliation because the employee has engaged in protected activity pertaining to public transportation safety or security . . . ." 29 C.F.R. § 1982.100(a). "The NTSSA does not, however, create a private cause of action . . . ." *Ndzerre v. Wash. Metro. Area Transit Auth.*, 174 F. Supp. 3d 58, 63 (D.D.C. 2016). To bring a claim under the NTSSA, an employee must first file "a complaint with the Secretary of Labor alleging such discharge or discrimination." 6 U.S.C. § 1142(c)(1). The employee may subsequently bring an action in federal court for a *de novo* review of the complaint if the Secretary of Labor does not

issue a final decision within 210 days of the complaint being filed and the Secretary's delay is not due to the bad faith of the employee. *Id.* at § 1142(c)(7). *See also Buck v. Wash. Metro. Area Transit Auth.*, 427 F. Supp. 3d 60, 62 (D.D.C. 2019) (citing 6 U.S.C. § 1142(c)(1) & (7)). A federal district court's jurisdiction under the NTSSA is therefore limited to: (1) enforcing a final order by the Department of Labor; and (2) conducting a *de novo* review of a complaint when the Department of Labor has not issued a final decision within 210 days of a complaint being filed and the delay is not due to the bad faith of the employee. *Ndzerre*, 174 F. Supp. 3d at 63. *See also* 29 C.F.R. §§ 1982.113–.114.

As the parties note, the case law interpreting the NTSSA is sparse both in the Eleventh Circuit and generally. However, OSHA regulations define the elements of a *prima facie* case of retaliation under the NTSSA. *See* 29 C.F.R. § 1982.104(e). When bringing a claim for retaliation under the NTSSA, an employee must make "a prima facie showing that [the] protected activity was a contributing factor in the adverse action alleged in the complaint." *Id.* at § 1982.104(e)(1). *See also* 6 U.S.C. § 1142(c)(2)(B)(i). Specifically, the employee must allege:

> (i) The employee engaged in a protected activity (or, in circumstances covered by [the] NTSSA . . . , was perceived to have engaged or to be about to engage in protected activity);
> (ii) The respondent knew or suspected that the employee engaged in the protected activity (or, in circumstances covered by [the] NTSSA . . . , perceived the employee to have engaged or to be about to engage in protected activity);
> (iii) The employee suffered an adverse action; and
> (iv) The circumstances were sufficient to raise the inference that the protected activity (or perception thereof) was a contributing factor in the adverse action.

29 C.F.R. § 1982.104(e)(2). *See also Duncan v. Wash. Metro. Area Transit Auth.*, 174 F. Supp. 3d 123, 127 (D.D.C. 2016) (quoting 29 C.F.R. § 1982.104(e)(2)). As to the fourth element—whether the protected activity was a contributing factor to the adverse action—the employee must show by a preponderance of the evidence that "the protected activity, alone or in combination with other

11

factors, affected in some way the outcome of the employer's decision." NTSSA Procedures, 80 Fed. Reg. at 69,122. *See also* Procedures for the Handling of Retaliation Complaints Under the National Transit Systems Security Act and the Federal Railroad Safety Act, 75 Fed. Reg. 53,522, 53,524 (Aug. 31, 2010) (to be codified at 29 C.F.R. pt. 1982) (interim final rule).

If the employee satisfies the elements of a claim for retaliation under the NTSSA, the burden shifts to the employer to "demonstrate[] by clear and convincing evidence that it would have taken the same adverse action in the absence of the complainant's protected activity." 29 C.F.R. § 1982.104(e)(4). *See also* 6 U.S.C. § 1142(c)(2)(B)(ii) & (iv); *Duncan*, 174 F. Supp. 3d at 127 (quoting 29 C.F.R. § 1982.104(e)(4)). This "clear and convincing" standard "is a higher burden of proof than [the] 'preponderance of the evidence' standard" required of the employee. NTSSA Procedures, 80 Fed. Reg. at 69,122 ("Clear and convincing evidence is evidence indicating that the thing to be proved is highly probable or reasonably certain." (citations omitted)). The Court must, therefore, grant summary judgment if either: "(1) [t]he complainant fails to meet the prima facie showing that protected activity was a contributing factor in the alleged adverse action; or (2) the employer rebuts that showing by clear and convincing evidence that it would have taken the same adverse action absent the protected activity." NTSSA Procedures, 80 Fed. Reg. at 69,122.

## II.     Plaintiff Fails to Bring Forth Sufficient Evidence of Retaliation under the NTSSA

Defendants argue that there is no evidence to prove that Plaintiff's protected activity contributed to its decision to continue the CSX bar. Defendants also argue that there is no temporal proximity, between Plaintiff's protected activity and SFRTA's decision to continue the CSX bar, that would reasonably suggest retaliation. Plaintiff argues that he need not bring forth evidence of retaliatory motive to prove that his protected activity was a contributing factor in SFRTA's decision to continue the CSX bar. The Court finds that Plaintiff fails to establish that his protected

activity in 2009 and 2010 was a contributing factor to SFRTA's decision to continue the CSX bar from March 2015 to November 2016. As an initial matter, the Court finds that Plaintiff engaged in protected activity by reporting safety concerns about warning signs used on the rail tracks. The Court also finds that Plaintiff suffered adverse employment actions by being terminated, having his engineer certification revoked, and being barred by CSX. However, Plaintiff fails to establish that his protected activity was a contributing factor in SFRTA's decision to maintain the CSX bar from March 2015 to November 2016.

OSHA regulations describe a "contributing factor" as "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." NTSSA Procedures, 80 Fed. Reg. at 69,122 (quoting *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 158 (3d Cir. 2013)). In evaluating whether SFRTA retaliated against Plaintiff in violation of the NTSSA, the Court must "determine whether there is reasonable cause to believe that protected activity was a contributing factor in the alleged adverse action." *Id.* Direct or circumstantial evidence may be used to meet the contributing factor element of the employee's claim. *Id.* Thus, "a complainant need not necessarily prove that the respondent's articulated reason was a pretext in order to prevail . . . ." *Id.* (citation omitted). Rather, the complainant can show that "the respondent's reason, while true, is only one of the reasons for its conduct, and that another reason was the complainant's protected activity." *Id.* (citation and internal quotation marks omitted).

Here, Plaintiff fails to show that the safety complaints he made in 2009 and 2010 were a contributing factor to SFRTA's decision to continue the CSX bar. In 2012, CSX barred Plaintiff from accessing the tracks based on Veolia's determination that Plaintiff violated Operating Rule 44. CSX maintained the bar until 2015, when SFRTA took on responsibilities previously handled by CSX. SFRTA then also relied on Veolia's representations in deciding to maintain the bar. There

is no evidence that Plaintiff's safety complaints, made several years prior, were a contributing factor to SFRTA's decision to continue the CSX bar. In fact, SFRTA's actions suggest the contrary: after Plaintiff communicated his previous complaints and the FRA decision at the Governing Board Meeting on January 22, 2016, the SFRTA Board immediately sought additional information from Veolia.[13] This does not reasonably suggest retaliatory animus. Even assuming that SFRTA was not diligent in seeking the FRA decision, Plaintiff fails to connect SFRTA's alleged inaction to Plaintiff's safety complaints.

Moreover, there is no temporal proximity between Plaintiff's statutorily protected statements and any alleged adverse actions by SFRTA. *Compare* [ECF No. 57 at 2 ¶ 8], *and* [ECF No. 69 at 7 ¶ 41] (SFRTA first learns of Plaintiff's protected activity in 2009 and 2010), *with* [ECF No. 57 at 4 ¶ 23], *and* [ECF No. 69 at 8 ¶ 49] (SFRTA gains control of certification decisions in 2015), *and* [ECF No. 57 at 4 ¶ 28], *and* [ECF No. 69 at 9 ¶¶ 47 & 49] (SFRTA has direct knowledge of the FRA decision on January 22, 2016). Too much time passed between Plaintiff's complaints in 2009 and 2010 and SFRTA maintaining the bar to reasonably show retaliation. *See, e.g.*, *Summers v. City of Dothan*, 444 F. App'x 346, 351–52 (11th Cir. 2011) (per curiam) (finding five- and seven-month periods to not be short enough to raise an inference of a causal connection between the protected activity and the adverse action); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) ("[M]ere temporal proximity, without more, must be very close. . . . A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." (citations and internal quotation marks omitted)).

---

[13] Plaintiff argues that after he told SFRTA about the FRA decision at the Governing Board Meeting on January 22, 2016, SFRTA failed to demand a copy of the decision from Veolia, to obtain it directly from the FRA, and to lift the bar until November 12, 2016. [ECF No. 67 at 10, 13–14]. To expect, or even demand, that SFRTA immediately lift the bar simply because Plaintiff told the SFRTA Board of the FRA decision and deem SFRTA's failure to do so to be retaliation for his protected activity is conjectural and meritless.

And while Plaintiff may satisfy his burden by "show[ing] that the adverse action took place within a temporal proximity of the protected activity," NTSSA Procedures, 80 Fed. Reg. at 69,122, "temporal proximity alone is insufficient . . . where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct," *Zarza v. Tallahassee Housing Auth.*, 686 F. App'x 747, 754 (11th Cir. 2017) (per curiam) (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).

As to the FRA decision, there is no evidence that SFRTA had actual knowledge of it until January 22, 2016, during SFRTA's Governing Board Meeting. Plaintiff instead argues that SFRTA—who was not involved in the hiring, testing, termination, or subsequent litigation with Plaintiff—had constructive knowledge of the FRA decision by virtue of gaining authority over certification of engineers in March 2015. [ECF No. 67 at 13]. Plaintiff asserts in a conclusory manner that because SFRTA gained "direct legal authority over [Plaintiff's] certification, SFRTA is deemed to have had constructive knowledge of the" FRA decision and should have independently investigated Plaintiff's bar. *Id.* This argument is too attenuated, and Plaintiff fails to bring forth any legal authority to support his assertion that constructive knowledge of the FRA decision can be imputed onto SFRTA. Simply because SFRTA gained authority over the certification of engineers, as well as the ability to lift the bar against Plaintiff, does not alone impute constructive knowledge of the FRA decision onto SFRTA.

In retaliation claims under different but sufficiently similar statutory schemes, "actual knowledge, and real intent, not constructive knowledge and assumed intent" is required, and courts "must focus on the actual knowledge and actions of the decision-maker." *Zarza*, 686 F. App'x at 754 (quoting *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002)). *See also Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1266 n.3 (11th Cir. 2008) (per curiam)

(finding it inappropriate to charge the defendant with constructive knowledge where no statute, regulation, or case suggested that it was appropriate to do so). Moreover, "neither a court nor a jury may impute knowledge to a decision-maker who has sworn he had no actual knowledge." *Summers*, 444 F. App'x at 352 (quoting *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1156 (11th Cir. 2002)). As Plaintiff fails to bring forth any evidence showing that SFRTA knew of the FRA decision prior to January 22, 2016 and ignored it in retaliation for Plaintiff's protected activity, Plaintiff's claim must fail.

Plaintiff also challenges SFRTA's reason for continuing the CSX bar under a "cat's paw" theory of liability. "The cat's paw theory provides that discriminatory animus may be imputed to a neutral decision-maker if a supervisor recommends an adverse employment action due to a discriminatory animus and that recommendation is a motivating factor of the decision-maker's ultimate adverse employment action." *Quintero v. Publix Super Markets, Inc.*, No. 18-CIV-21615, 2020 WL 607117, at *2 (S.D. Fla. Feb. 7, 2020) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011)). "In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." *Crawford v. Carroll*, 529 F.3d 961, 979 n.21 (11th Cir. 2008) (quoting *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (per curiam)).

Plaintiff argues that retaliatory animus may be imputed onto SFRTA because Mr. Barkman and Mr. Oglesby allegedly knew of his protected activity and participated in the decision-making process to continue the CSX bar. [ECF No. 67 at 10–11]. As Defendants note, Plaintiff's cat's paw theory requires that he show that there were SFRTA supervisors who had clear retaliatory animus towards him for his protected activity and sufficiently influenced SFRTA's decision to continue the CSX bar. [ECF No. 70 at 4–5]. Plaintiff's cat's paw theory is unsupported by the evidence for

16

a few reasons. First, Plaintiff fails to show that Mr. Barkman or Mr. Oglesby held any animus towards him. Second, Plaintiff fails to show "or even suggest[], the existence of any 'biased recommendations'" from either Mr. Barkman or Mr. Oglesby that were relied on by neutral "relevant decisionmakers." *See Matamoros v. Broward Sheriff's Off.*, 2 F.4th 1329, 1337 (11th Cir. 2021) (finding the plaintiff's "cat's-paw theory likewise fails, principally because she hasn't shown, or even suggested, the existence of any 'biased recommendations' from other Sheriff's Office employees to the relevant decisionmakers."). Third, Plaintiff fails to show that SFRTA considered Plaintiff's protected activity in deciding whether to maintain the bar.

## CONCLUSION

Based on this record, a reasonable jury could not find that Plaintiff's protected activity contributed to SFRTA's decision to maintain the CSX bar or that SFRTA's decision to maintain the bar was in retaliation for his protected activity. Because Plaintiff fails to establish a *prima facie* claim for retaliation under the NTSAA, the Court's review must end. *See* 6 U.S.C. § 1142(c)(2)(B)(i). Therefore, summary judgment shall be granted in favor of Defendants SFRTA and Tri-Rail.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant South Florida Regional Transportation Authority and Tri-Rail's Motion and Memorandum of Law in Support of Motion for Summary Judgment, [ECF No. 56], is **GRANTED**.

2. All pending motions as to Defendants South Florida Regional Transportation Authority and Tri-Rail are **DENIED as moot**.

3. Pursuant to Federal Rule of Civil Procedure 58, **final judgment shall be entered separately**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 1st day of September, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE